Good morning. May it please the Court and Counsel, I am John McKella with the Nevada Office of the Attorney General, and it is my privilege to represent Nevada Gaming Control Board agents Stephen Heiman and Russell Neal. I would like to reserve two minutes for my rebuttal. The Court should reverse the District Court's erroneous reservation of a question of law to the jury and find the agents possess qualified immunity from plaintiff's claims. The undisputed material facts as a matter of law show probable cause, require the recognition of the agent's possession of qualified immunity, and thus require the dismissal of plaintiff's claims against the agents. Isn't it disputed what the mens rea was? I'm sorry, Your Honor? Is it not disputed as to what the mens rea was? No, it is not, Your Honor. There's a few things. Who did the plaintiff say he was guilty? The plaintiff did not say he was guilty. However, you have a few things on that. There's a general intent crime that was not examined by the District Court, NRS 465-070, which does not have a knowledge element. Well, I don't know about that. The Nevada statute speaks of it as fraud. It's a fraud crime. That usually requires an intent. Respectfully, Your Honor, there's a disjunctive or in that statute. I know there is, but there's also a heading for the statute. So, I mean, you've got an argument there, but it's a possible. You possibly may be right, but do you have any Nevada case? There's no case. No Nevada case. So we have to interpret a Nevada statute. And the Nevada statute says it's fraud, and you say, well, it doesn't really mean fraud, but okay, that's your argument. Okay. Even if that's the case, Your Honor, there are undisputed material facts that show a fair probability that plaintiff committed a crime. Well, how can he commit a crime unless he has the intent? With regard to intent, if you go with the Easy Rider's case, plaintiff was warned by Harris personnel on several occasions that he had been overpaid. He was warned. Well, does that create an intent? No. He was in doubt. You don't create an intent by telling somebody you've done something. The person has to acknowledge it. Respectfully, Your Honor, with regard to probable cause, it goes to what the agents knew, not to what plaintiff was thinking. The agents could not possibly know what plaintiff was thinking. What the agents knew with regard to intent and knowledge is that plaintiff was warned, and they warned plaintiff, and after these warnings, plaintiff refused to return the money. Well, they knew what they had told them. That doesn't mean they knew what he thought. That's exactly right, Your Honor. And if we had to, you know ñ What do you make of the fact that he kept asking to see their evidence? Didn't that indicate that he didn't believe or at least was doubtful as to whether he had received overpayment, but he wanted to know if he had, he would pay. If he hadn't, he wouldn't pay. I ñ there's ñ we're looking at a reasonable or a fair probability that the plaintiff had committed a crime here. And if he was asking to see the evidence, that doesn't indicate that there was not a fair probability. What the agents knew is that they had a surveillance video showing an overpayment, that Harris identified plaintiff as the person who received the overpayment, that multiple people from Harris warned plaintiff he had been overpaid, that Agent Hyman warned plaintiff that he had been overpaid, and upon all of that, plaintiff still refused to return the overpayment. And ñ Did he ever ñ what did he say? Did he say, I'm just obstinately going to refuse to do it? Or did he say, I don't think I overpaid? Or what did he say? The only thing that plaintiff said was he claimed that he didn't know whether he had been overpaid. However, even denials before a court, self-serving denials, are not sufficient to prevent a fair probability that a crime had occurred. These are all matters that are for a trial where a plaintiff would be able to argue whether or not he is, in fact, guilty. But what we're concerned with today is probable cause, whether there's a fair probability that the plaintiff had committed any crime. And that is based on the facts within the agent's knowledge at the time of the alleged arrest. But is it your position that the agent doesn't have to have any belief with respect to mens rea? Or is it your position that on the totality of the circumstances, a reasonable agent would have concluded that there was probable cause to believe that he had the requisite mens rea? I believe that is unclear. Under easy riders, it states. Well, which is your position? Which is my position? Yeah. What do you think the law is? Oh, well, I think since there were no affirmative representations that plaintiff's conduct was lawful, that we can go with the court's recognition and ratus of other circuits that you need evidence of the physical acts. And that is sufficient to have probable cause of the state of mind. As I understand it, there are two Nevada statutes, 205.08321A and 465.0703, both of which seem to fit this situation. Is that correct? That's correct, Your Honor. So given the fact that the officers were presumably aware of the content of the statute, the question is whether they had a reasonable basis for concluding that the defendant had violated either or both of those statutes. Is that correct? Yes. Whether their knowledge at the time would have indicated a fair probability that either of those statutes had been violated. Okay. And in this particular case, as I understand it, Coffey advised him he'd been overpaid. The game manager advised him he'd been overpaid. He refused to return it. Hyman received further notification from Weber that he'd refused. Just to be sure that he was correct, he looked at a video to confirm the overpayment. It sounds like they bent over backwards to try to avoid acting recklessly in this case. But given the statutes, given the fact that it was clear he had had an overpayment and refused to return it, what's the problem with probable cause here? It seems pretty straight up to me. I absolutely agree, Your Honor. And all those facts you cited are undisputed by plaintiff. So under the circumstances, we don't even have to get into mens rea or any of that, do we? This is a question for an arrest. Whether there's mens rea, whether the statute was complied with is a matter for the court and a trial at a later point, is it not? No, it is not, Your Honor. Okay. Why not? Because you have undisputed facts where it's a question of problem or, sorry, it's a question of qualified immunity, which courts are required to decide as a matter of law. No, I understand. You're getting into a separate point. I'm just saying that generally speaking, whether or not these folks proceeded initially properly is a matter of whether they thought there was probable cause. Now, I know we're talking now about whether there should be qualified immunity, but the first step is whether or not they had probable cause, right? That is the first step. However, since the facts are undisputed under the merits prong of the qualified immunity analysis, the court was required to decide that question. Right, because that under our case law is a matter of law, not a matter of fact. Where there are undisputed facts, it's up to the court, the district court, to determine or the state court, as the case may be, to determine as a matter of law whether or not qualified immunity applies. Is that correct? Yes, that is correct, Your Honor. Now, I mean, the question, I want to come back to the question I tried to pose before because the, and maybe we don't have to reach it in this case, but it seems to me the, it's unclear whether the, a probable cause is provided simply by the act so that the arresting officer doesn't have to have any view of the intent, which would lead to some very strange results, I think, in some, like fraud cases. Or whether he has to have some belief in the intent of the person, probable cause, fair preponderance, whatever you want to call it, low level, and then the question would be whether in the totality of the circumstances he had a basis for forming that belief. Now, it may be that you meet both those standards, but I'm still going to press you a little bit to see which of those you think is the law that I circuit. I agree with you that the law is unclear on that, but even if the law did require some evidence of mens rea, then Easy Rider said the fact that there were warnings and the agents knew of the warnings, that provides sufficient evidence of mens rea for probable cause, and I believe I've used up all my rebuttal time as well. Well, you can answer questions that our panel puts. So any other questions of the panel? If not, we'll maybe give you a little moment for rebuttal, but we'll see. Let's hear from your adversary. Thank you. And I ask you to reverse the district court and find qualified immunity for the agent. Thank you. May it please the Court. Jeffrey Dickerson appearing on behalf of Mr. Conner, who is the appellee in this case, concluded that there were disputed issues of fact as to the probable cause for the mens rea, which is the point each of your questions touched upon, and, of course, that's the issue on appeal. Under qualified immunity, we must keep in mind that the – in analyzing whether the violation has occurred, the evidence has to be construed in a light most favorable to the plaintiff. The district court did this. The district court followed that rule and found that the – as Your Honors pointed out, the constant questioning about the evidence. Let me see the video. He kept asking about that. That indicates that he's suspicious about whether the accusation is actually true. No, but the question is not what was in his mind. The question is, based on the facts, either undisputed or taken most favorably to your side, what would a reasonable police officer infer from that situation? And it's an objective standard and, therefore, doesn't require a jury determination at this point. It's a question of what would a reasonable officer infer. Now, why wouldn't a reasonable officer infer he might be wrong? That's neither here nor there. This guy, you know, the video shows he's overpaid, and instead of – after all these folks telling him he's overpaid, he's still coming up with one excuse after another not to pay. Why can't the police officer at that point say, oh, this guy's just trying to yank us around and we're going to arrest him because it's clear that he did commit this crime? Well, he knew one thing at the beginning of the actus reus, if you will, was the dealer. When Ms. Coffey came up to Mr. Conner at the table, table 3, and finally got to talk to him, she said, our dealer made a mistake and overpaid you. Our dealer made a mistake and overpaid you. If the dealer can make a mistake who deals all the day long as a job, why can't Mr. Conner make a mistake? So that's an important fact, I think. And the district court also knows. It's fine if he made a mistake and he didn't know about it, but you have at least allegations here that several people told him there had been a mistake, and he then still refused to return it. Doesn't that change the tenor of this? Because all through that, while he was being told that, he told every person to a T, let me see the video. He wanted to see the video. Now, why isn't it reasonable? There are alternative possibilities, but why isn't it reasonable for the police officer to say, now, after all these people who have no particular motive to lie because, after all, they want to continue, he's a regular business, he's a regular gambler, they want to keep his custom, they want to keep him as a customer. All these people have told him he's overpaid, and he's still saying, you know, well, show me the video. That seems awfully suspicious. Couldn't a reasonable police officer say, he's just trying to see if there's some way he can weasel out and keep this money? That may not be the only inference, but isn't that a perfectly reasonable inference? I don't think there's a fair probability that that's the case. And under these facts, a reasonable jury could conclude. And if you construe the evidence, and Leighton was favorable to the – on the issue of mens rea and what the officer knew at the time, he knew facts that indicated to him that there was no probable cause. He knew that the dealer had made the mistake, and therefore Mr. Conner could have made the mistake. He knew that Mr. Conner had commingled those monies and gone to Table 3 and played for, it's disputed, 40 to 50 minutes, maybe less, but somewhere in that time frame. And he'd been playing, he'd commingled his chips. By that time, he had no way of ascertaining whether or not he was overpaid at the table, and therefore he wanted to see the video. They pointed to it. They said, we got it on the sky. They got it on surveillance. That's how the supervisor confirmed that there was an overpayment. All he wanted to do was see the video. We also have evidence that Hyman offered on the telephone to him, this is Mr. Conner's deposition, that Hyman offered him to see the video. And that indicates that he could have seen the video. That indicates that Hyman could have let him see the video. And then when he got to the station, they refused to let him see the video. Well, forgive me if I'm misunderstanding this, but I, is it customary for police officers to have to show potential arrestees videotapes of the reason why they think he needs to be arrested? No, that's not my point. My point is that on the question of mens rea, that's an important fact. Okay. But I, unlike my good colleague here to the right, to me mens rea is irrelevant at this point. What we're really talking about, did they have probable cause? And then when you get to the district court, the question is whether there are undisputed material facts that required the judge to make the determination of whether there should be qualified immunity or whether there are disputed facts that had to go to the jury. That's the issue for me. So if I'm correct, what your client thought about this was not, it may be important if you get to a trial, but it's not important for purposes of our considerations, I think. So I'd appreciate your elucidating why the key elements of this are disputed. In other words, why should the issue go to the jury as opposed to have the judge decide as a matter of law whether there are undisputed facts and whether they're entitled to qualified immunity? Well, I think I need to retreat to my previous position with all due respect. I don't like to evade questions, and I'm not trying to do that. Okay. But I think the premise that you're basing the question on is wrong. Okay. Tell me why. And that premise that you indicated to me is that mens rea is not in the probable cause analysis for qualified immunity, and I would beg to differ with that. Probable cause requires a finding that there's a fair probability that a crime has been committed by the offender. And that crime, as you pointed out in the two statutes, and I believe Justice Noonan was right in noting that they both must be intense statutes. You can't have a strict liability statute under that 205. Right. So there has to be a component of mens rea that has to be examined by the officer and in turn by the district court and in turn by this Court in deciding whether or not there's a question of fact on qualified immunity. And we've maintained there is for the reasons I've already stated in my argument. But isn't – accepting all that, the issue is still, the legal issue is, could a reasonable police officer, based on the undisputed facts or the facts taken most favorably to you, infer that there was the requisite intent, not whether he could have inferred something else also reasonably. The question is whether there was a basis on which he could reasonably have inferred intent. And I don't understand why you say he could not have inferred reasonable intent in this case. If he knows the dealer made a mistake, why couldn't Mr. Connor have made a mistake? He doesn't have anything beyond that. He doesn't – it's not like he shoplifted and that was caught on video. He has – he knows he's seen the tape. He's seen the tape of hands. It doesn't show him. It doesn't – it shows an overpayment. But the dealer testified that he made a mistake. And Hyman knew. And Neal knew that there was a mistake that started the whole thing off. So just getting – just starting with the actus reus, you don't even get away from that table where the actus reus supposedly occurred without some question, a serious question as to whether or not Mr. Connor had an intent to keep Harrah's money. And then it goes forward all the way to the point where they put him in the car and take him to Harrah's to pay the money back. Okay? And at that point in time, he said, okay, I'm going to pay the money back. And they still detain him and transport him. He's still in confinement at that point in time. He's still technically under arrest. So even if – even if he had probable cause, he lost it at that point. He lost probable cause at that point because he – the intent element's gone. I'm going to pay the money back. He no longer has the intent. Wait a minute. Wait a minute. Wait. That can't be right. You're saying any time a thief pays the money back, he can no longer be charged with the theft? Up until that point in time, we maintain he didn't have probable cause. But at the point in time that he said, I'll give the money back, he certainly lacked probable cause. That's what I meant. Okay. Thank you. We'll give you a minute to respond, counsel. Thank you. Just basically one real fast point. There were five undisputed material facts which showed probable cause. You heard plaintiffs stand up here and not dispute any one of the five. There was the surveillance video showing the overpayment. There was the fact that Harris identified the plaintiff as the overpaid person. You had the Harris warnings. You had Agent Hyman's warnings. And after all that, the plaintiff refused to return the overpayment. And those from your perspective are the undisputed facts that were legally well, that the judge taking those facts as a matter of law could make a determination about qualified immunity. Is that correct? Absolutely, he could make that determination, Your Honor. In fact, those are more than necessary if there's no specific intent requirement on a probable cause analysis. Okay. Any other questions from colleagues? Thank you both for your argument. The matter of Connor v. Hyman is submitted.
judges: Rakoff, Noonan, Smith